In re GRIGSBY–GRUNOW CO.

STILLE YOUNG CORPORATION et al. v. GRIGSBY–GRUNOW CO. et al.

No. 5395.

Circuit Court of Appeals, Seventh Circuit.
April 27, 1935.

Albert Langeluttig, of Chicago, Ill., for appellants.

Isaac B. Lipson, of Chicago, Ill., for appellees.

William H. King, Jr., and Richard H. Merrick, both of Chicago, Ill. (Cassels, Potter & Bentley, of Chicago, Ill., of counsel), amici curiæ.

Before SPARKS, ALSCHULER, and FITZHENRY, Circuit Judges.

SPARKS, Circuit Judge.

This appeal arises over the court's dismissal of appellants' petition, under section 77B of the Bankruptcy Act (11 USCA § 207) for the reorganization of the Grigsby-Grunow Company, an Illinois corporation, filed October 12, 1934.

All proceedings referred to herein, whether in bankruptcy or otherwise, were had before Judge Barnes of the District Court. We deem it necessary to set forth a short résumé of those proceedings as explanatory of the conditions which confronted the court at the time of the ruling, and as bearing on the reasonableness of the court's conclusion that the petition was not filed in good faith.

On November 24, 1933, the District Court appointed receivers for the debtor company upon a bill of complaint filed by P. R. Mallory & Company, Inc., an unsecured creditor, on behalf of itself and all other creditors thereafter joining. Later, on the same day, an involuntary petition in bankruptcy was filed against the debtor. On December 1, 1933, a second involuntary petition in bankruptcy was filed against the debtor, and both petitions were afterwards consolidated, and later dismissed by the court. That ruling was affirmed by this court. 74 F.(2d) 7. On February 17, 1934, a third involuntary petition was filed, and adjudication was had March 13, 1934. On February 20, 1934, a receiver in bankruptcy was appointed and continued to act until April 16, 1934, when he was elected trustee. The business of the debtor was that of manufacturing and selling radios, radio tubes, and electric refrigerators and parts. Its principal assets consisted of real estate and manufacturing plants in Chicago, together with raw material and finished stock carried in inventory, furniture and fixtures, accounts receivable and certain investments, which appellants alleged to be worth in excess of $8,000,000. The liabilities were in excess of $4,500,000 and the debtor's capital stock consisted of 3,000,000 no par shares, of which there were outstanding approximately 2,783,826 shares.

From the date of the appointment of the equity receivers, they, with the first mortgage bondholders' committee, together with a committee representing certain of the unsecured creditors, continuously, but without success, sought to effect a reorganization of the debtor, or a sale of its assets as an entirety. Those efforts were continued after the institution of the bankruptcy proceedings and the appointment of the trustee, with the latter's co-operation, but to no avail.

The trustee, upon the recommendation of the two committees, then turned his attention to the liquidation of the property. Plans to that end were completed, a selling organization was assembled, catalogues were prepared, and the sale of the property was extensively advertised in trade papers and newspapers throughout the United States. Pursuant to this plan, and with the authority of the court, the trustee, on October 10 and 11, 1934, sold certain of the debtor's property.

It was under these conditions that the three appellants, with debts approximating $31,000, on October 12, 1934, filed their petition for the reorganization of the debtor under section 77B. At the same time, they presented their petition praying for an order forbidding the trustee to make delivery of the property sold by him on the two preceding days, and directing him to cease negotiations for the sale of any other of the debtor's property. Those petitions were heard on the same day they were filed. Appellants served notice of the applications only upon the trustee's counsel, and he, in turn, notified as many of the parties interested as he could. There were present at the hearing the debtor's counsel, the trustee, the petitioning creditors in the bankruptcy case, the bondholders' committee and various other creditors. The chairman of the unsecured creditors' committee was unable to be present, but sent word that he was opposed to any delay in liquidation. At that hearing there was outlined to the court the lengthy and unsuccessful negotiations which had been previously carried on for a reorganization of the debtor during the equity and bankruptcy proceedings. Counsel for all the parties except appellants, representing the greater part, both in number and amount, of the interested creditors, agreed that reorganization was impossible and that liquidation was inevitable. Counsel for appellants did not advise the court what the plan was that he had in mind for the reorganization, nor did he suggest to the court any means whereby that object might be attained. He merely stated that he felt reasonably certain that additional funds could be procured to assist in the reorganization; that he had consulted with various engineers, not naming them, and had been advised that a reorganization was feasible without additional financing; that he and his associates had consulted with certain financial interests, not naming them, and that he felt reasonably certain that additional substantial sums in excess of a million dollars could be procured to assist in a reorganization. Later he stated that he then had a man in court who, during the lunch hour, had been in conference with certain financial interests which were interested in investing substantial sums in a reorganized corporation, but that negotiations had not proceeded sufficiently far to justify a disclosure of the identity of those interests. However, he offered to disclose their names privately to the court in chambers, or to George E. Q. Johnson, who was then present as a representative of certain creditors.

Immediately after the presentation the record discloses the following proceedings:

"Thereupon, the court stated that the affairs of the Grisby-Grunow Company had first come to his attention in his court at the time of the filing of the creditors' bill for the appointment of a receiver in November, 1933; that he had then advised all parties in interest that he did not wish the receivership proceeding to continue indefinitely in his court and instructed them to proceed with diligence to bring about a reorganization of the affairs of the Company, if possible; that from the information which came to him concerning its condition at that time, he had come to the conclusion that it was not possible to bring about a reorganization; that during the pendency of the bankruptcy proceedings, which also came before him, he had from time to time been advised of the progress of the bankrupt estate; that the affairs of the corporation had been in his court for a year and that he thought the pending legal proceedings should be brought to an end and not prolonged; that he was at this time of the opinion that the affairs of the Company were in such condition that it was not possible to bring about a reorganization; that the provisions of section 77B of the Bankruptcy Act require that the court shall be satisfied that a petition has been filed in good faith; that in his opinion it was essential, in order that such good faith be established, that it appear that there is at least some prospect that the affairs of the debtor corporation can be reorganized; that from his knowledge of the affairs of this debtor corporation there is no prospect of such a reorganization and he, therefore, found that the petition was not filed in good faith as required by the provisions of section 77B of the Bankruptcy Act [11 USCA § 207]. Thereupon, the court entered the following order:

"'This ·matter having come on ·to be heard on the motion of Pilcher-Hamilton Daily Co. to dismiss the petition herein, and the court being of the opinion that the said petition has not been filed in good faith;

"'It Is Ordered that said petition be and is hereby dismissed.'"

Appellants make the following contentions:

(1) The trial court erred in finding that their petition was not filed in good faith

without giving an opportunity, upon issues made by pleadings, to present evidence and be heard thereon.

(2) The trial court erred in acting upon information which was not put in evidence, but was, if anywhere, solely within the mind of the Judge.

(3) The conduct of the trial judge, in dismissing appellants' petition without giving an opportunity to appellants to present evidence in support of their petition, amounted to a deprivation of life, liberty, and property without due process of law, contrary to the Fifth Amendment of the Constitution of the United States.

(4) The trial court erred in dismissing appellants' petition upon the oral motion of Pilcher-Hamilton Daily Company. Section 77B provides that in order to contest the allegations for a petition for reorganization, three creditors, having provable claims of One Thousand Dollars over and above security, must act.

(5) The trial court misapprehended the meaning of "good faith" as used in section 77B, and erred in dismissing the appellants' petition, as the trial court asserted, for want of good faith.

 The record does not disclose that appellants were deprived of an opportunity of being heard or of presenting evidence upon their petition. Considerable time was consumed by counsel for appellants and counsel for the numerous other creditors in oral argument before the court. There was no indication on the part of appellants that they desired further time for argument, or that they desired to introduce evidence in court in support of their petitions. Their counsel did offer to divulge to Judge Barnes, in chambers, the names of those who he thought would furnish the money necessary for a reorganization, admittedly on the ground that the plan contemplated had not proceeded sufficiently far to warrant the disclosure to the other creditors. That offer the court quite properly did not accept. In that respect, appellants placed themselves in the position of asking the court to do precisely the thing of which they now complain

in their second specification of error. It was not necessary that formal pleadings be filed by opposing counsel in order for the court to determine whether the complaint was in proper form and was filed in good faith. Those were facts which the court was bound to find affirmatively before proceeding further, and the fact that one creditor, instead of three, orally moved the court to dismiss appellants' petition would not relieve the court from performing that duty. It is obvious that no facts are disclosed from which it can be said that appellants' rights under the fifth amendment of the Constitution have in any way been violated.

 A fair and reasonable construction of the court's statement preliminary to its ruling does not warrant the charge that the court in its ruling acted upon information solely within the mind of the Judge. A full statement was made to the court, in the presence of appellants' counsel, with respect to the proceedings in both the equity and bankruptcy cases, and the unsuccessful efforts to reorganize the debtor and the preparation and expense incurred in the liquidation proceedings. Much of that statement must have been shown by the record, and appellants were charged with the knowledge of the record. The court was no doubt previously aware of the truth of all the statements made by opposing counsel, but be that as it may, the statements were made in the presence of appellants' counsel in open court, and he never questioned the truth of them. The court, under those conditions, had a right to consider and rely upon them in determining the question of good faith, and there is nothing to indicate that it considered anything solely within its knowledge or that was not equally within the knowledge of all parties concerned.

Appellants insist that the court misapprehended the meaning of the words "good faith" as contemplated by the statute. We are not impressed with that contention, and we think the decisions cited do not support it. We are convinced that the court was right in concluding that appellants' petition was not filed in good faith.

The order is affirmed.