## In re V. LOEWER'S GAMBRINUS BREWERY CO., Inc.

### No. 82029.

District Court, S. D. New York.

Dec. 6, 1944.

Glass & Lynch, of New York City (Leslie Kirsch, of New York City, of counsel), for John L. Flynn, trustee.

Paskus, Gordon & Hyman, of New York City, for creditors Loewer Realty Co., etc.

William Harris, of Newark, N. J., for proponents of plan.

BRIGHT, District Judge.

The interesting question presented is whether or not, under the circumstances shown in this proceeding conducted under Chapter X of the Bankruptcy Act, 11 U.S. C.A. § 501 et seq., a plan of reorganization, which is essentially a liquidation and distribution pro rata to certain classes of creditors, is possible under the statutory provisions of that chapter.

These facts undisputedly appear. The debtor was the owner of a brewery and prior to the bankruptcy was engaged in the manufacture of beer and malt beverages. An involuntary petition was filed on January 8, 1943, and the present trustee was appointed receiver. On February 24, 1943, application was made under Chapter X, that application was approved as made in good faith, and the receiver was appointed as trustee. On May 13, 1943 an order was made authorizing the sale of the brewery property and all other assets, with the exception of accounts receivable, claims and choses in action for the sum of $100,000, subject to a mortgage of $75,000. On an appeal by one of the stockholders that order was affirmed, V. Loewer's Gambrinus Brewery Co., 2 Cir., 141 F.2d 747, and on August 10, 1944, the sale was consummated.

The only assets of the debtor now remaining in the trustee's possession are cash in bank and whatever may be realized from the accounts receivable, claims and choses in action.

The trustee has reported that, in his opinion, a plan of reorganization cannot be formulated and effected herein, and recommends that, pursuant to Sections 236 and 238 of Chapter X, an order be entered dismissing the reorganization proceeding and directing that bankruptcy be proceeded with.

A number of creditors oppose, claiming that a plan is feasible, and that to direct the dismissal of this proceeding and its further conduct in straight bankruptcy would result in a double expense and consequent depletion of assets to the detriment of creditors.

Patent Cereals, a creditor, presents a plan, concurred in by a number of other creditors, which in its essence, after reciting that its purpose is to expedite the administration of the estate and to avoid unnecessary duplication of expenses, proposes the following:

I, a division of creditors and stockholders into eight classes—(1) the United States for taxes, (2) the State of New York for unemployment franchise and other taxes, (3) the City of New York for sales and business taxes, (4) the State of

New Jersey for possible beverage tax, (5) claims arising during the receivership and trusteeship, (6) unsecured creditors, (7) claims of former officers, directors and stockholders, and (8) stockholders.

II, all assets of the debtor, which include cash, and whatever may be due from Newmont Factors, accounts receivable, and claims and choses in action, shall be reduced to cash.

III, creditors in classes (1) to (5), inclusive, shall not be affected by the plan, and are to be paid in full. No provision is made for the stockholders in class (8), in view of the fact that the debtor is insolvent, and they need not file acceptances of the plan. Creditors in classes (6) and (7) shall share pro rata in the assets legally available for their payment, after satisfaction of administration, reorganization, operating, and wage claims.

Sections IV and V provide for the determination of claims to which objections are filed, as well as the payment of administration and organization expenses; and VI to the approval, acceptance, confirmation and consummation of the plan, distribution of assets, and the binding effect upon the debtor and all others of whatever may be accomplished.

Section 216 of Chapter X, Title 11 U.S.C.A. § 616, in substance, provides that a plan of reorganization (1) shall include provisions altering or modifying rights of creditors and stockholders jointly "or some class of them" either through the issuance of new securities "or otherwise"; (2) may deal with all or any part of the property of the debtor; (3) shall provide for the payment of all costs and expenses of administration and allowances; (4) may provide for the rejection of any executory contracts except those in the public authority; (5) shall specify what claims are to be paid in cash in full; (6) shall specify the creditors or stockholders not to be affected by the plan; (7) shall provide, for the creditors affected by and who do not accept the plan, adequate protection for the realization of the value of their claims; (8) shall provide for stockholders who do not accept, "provided, however, That such protection shall not be required if the judge shall determine that the debtor is insolvent"; (9) shall provide for the retirement of any indebtedness created or extended under the plan; (10) shall provide adequate means for the execution of the plan which may in-

clude, among others, the sale of all or any part of the corporate property, and the distribution of all or any assets, or the proceeds derived from the sale thereof, among those having an interest therein; (11) shall include provisions with reference to the selection of directors, officers or voting trustees, if any; (12) shall provide for inclusion in the charter of the debtor of clauses with reference to stock, the privileges of the several classes of securities to be issued and the making of reports; (13) may include provisions for the settlement of claims and their retention and enforcement where not settled; and (14) may include other appropriate provisions not inconsistent with the other portions of the Chapter.

The plan proposed by the creditors would seem to comply with subdivisions 1, 2, 3, 5, 6, 10, 13 and 14 above, except that no provision for a sale of any asset is included. The other provisions, in view of the fact that the debtor is insolvent and only priority and general creditors are to share in the liquidation, do not appear to be applicable or necessary.

A plan of liquidation in a Chapter X proceeding was confirmed by Judge Leibell in Matter of Cenwest Corporation, Bankruptcy No. 80,504,[1] and by Judge Campbell in Re Lorraine Castle Apartments Building Corporation, D.C., 53 F.Supp. 994–996. In each of those cases, however, the liquidation was to be preceded by a sale of the principal asset. There is no such sale proposed here, and no altering or modification of the rights of general creditors except a reduction pro rata to fit the amount of cash to be distributed among them. The plan proposed by the creditors is not, in my opinion, such a one as is contemplated by section 216.

A distribution in the Chapter X proceeding is not opposed by the trustee if it can be accomplished within the statutory power. Section 236 of the Bankruptcy Law, which relates to dismissals and adjudications in Chapter X proceedings, provides as far as material:

"Sec. 236. If no plan is proposed within the time fixed or extended by the judge, or if no plan proposed is approved by the judge and no further time is granted for the proposal of a plan, or if no plan approved by the judge is accepted within the time fixed or extended by the judge, or if confirmation of the plan is refused, or if a

---

[1] No opinion for publication.

522

confirmed plan is not consummated, the judge shall—

"(1) where the petition was filed under section 127 of this Act, (as it was here) enter an order dismissing the proceeding under this chapter and directing that the bankruptcy be proceeded with pursuant to the provisions of this Act; * * *."

Section 238 reads as follows:

"Sec. 238. Upon the entry of an order directing that bankruptcy be proceeded with—

"(1) where the petition was filed under section 127 of this Act, the bankruptcy proceeding shall be deemed reinstated and shall thereafter be conducted, so far as possible, as if the petition under this chapter had not been filed; * * *;

"(2) a trustee shall be appointed pursuant to section 44 of this Act and shall supersede any trustee previously appointed; and

"(3) only such claims as are provable under section 63 of this Act shall be allowed, and claims not already filed may be filed prior to the expiration of three months after the first date set for the first meeting of creditors as provided in section 55 of this Act, or, if such date has been previously set, then prior to the expiration of three months after the mailing of notices to creditors of the entry of the order directing that bankruptcy be proceeded with."

The predecessor of these sections was Section 77B of the Bankruptcy Law, subsection c(8), 11 U.S.C.A. § 207, sub. c(8). They provided, "Upon approving the petition or answer or at any time thereafter, the judge, in addition to the jurisdiction and powers elsewhere in this section conferred upon him, * * *; (8) if a plan of reorganization is not proposed or accepted within such reasonable period as the judge may fix, or, if proposed and accepted, is not confirmed, may, after hearing, whether the proceeding be voluntary or involuntary, either extend such period or dismiss the proceeding under this section or, except in the case of a railroad or other public utility or of a debtor which has not been found by the judge to be insolvent, direct the estate to be liquidated, or direct the trustee or trustees to liquidate the estate, appointing a trustee or trustees if none shall previously have been appointed, as the interests of the creditors and stockholders may equitably require. * * *"

Subsection k of Section 77B provided for practically the same procedure as would follow in the event of a straight bankruptcy.

Several cases have held that a liquidation could be accomplished under the provisions of Section 77B—In re Stanley Drug Co., D.C., 22 F.Supp. 664; In re Janson Steel & Iron Co., D.C., 47 F.Supp. 652–658; In re Porto Rican American Tobacco Co., 2 Cir., 112 F.2d 655; and Clinton Trust Co. v. John H. Elliott Leather Co., 2 Cir., 132 F.2d 299–304. There has been no case that I have been able to find, or to which I have been referred, that approves a plan of liquidation such as presented by the creditors here in a Chapter X proceeding.

The Supreme Court, in the recent case of Fidelity Assurance Association v. Sims, 318 U.S. 608, 63 S.Ct. 807, 811, 87 L.Ed. 1032, would seem to hold contrariwise. In that case, a petition for reorganization under Chapter X was held not to have been filed in good faith because it was obvious from a reading of it that it contemplated a liquidation at the very beginning, but there is much in the opinion that frowns upon the use of Chapter X to liquidate a corporation. Mr. Justice Roberts wrote in part:

"Petitioners and Securities and Exchange Commission urge, however, that Chapter X may be employed to accomplish a slow and orderly liquidation which they say is imperative in the interest of all creditors. * * * It is urged that a plan of liquidation may constitute a reorganization under Chapter X, and decisions are cited to that point, but an examination of them will demonstrate that in none save where the corporate purpose of the debtor was, in effect, holding and liquidating securities was the plan such as is proposed here. Under the facts of this case, the suggested plan is but an alternative for ordinary bankruptcy without any readjustment of the rights of creditors and stockholders inter se and this fact serves to distinguish the remaining cases on which reliance is placed. * * *

"It was suggested at the bar that, even if liquidation is all that can be hoped, this would be better managed by a single bankruptcy court than in several separate proceedings. The difficulty with the suggestion is that Congress did not intend resort to Chapter X to be had for the mere purpose of liquidation. The scheme of the chapter precludes any such conclusion.

The mandate of § 144 is clear that unless the judge is satisfied the petition was filed in good faith, he must dismiss it. Under the predecessor of Chapter X,—§ 77B of the Bankruptcy Act—the District Judge was given authority, by subsection c(8) [11 U. S.C.A. § 207, sub. c(8)], under certain circumstances, to 'direct the estate to be liquidated, or direct the trustees to liquidate the estate * * *.' In Chapter X, on the other hand, § 236(2) provides that if no plan is approved or accepted, or if it is not consummated, the judge may, after hearing all persons in interest, adjudge the debtor a bankrupt or dismiss the proceeding as he may decide in the interest of creditors and stockholders. This statute does not contemplate a liquidation in a Chapter X proceeding but a liquidation in ordinary bankruptcy or a dismissal outright. * * *

"Congress did not intend a Chapter X case to be turned into a liquidation proceeding at the outset, but intended the litigation to become a straight bankruptcy only after the failure to consummate a plan, and meant to limit the parties to their remedy in ordinary bankruptcy in all other cases."

Judge Clark, in the case of Country Life Apartments, Inc. v. Buckley, 2 Cir., 145 F. 2d 935, where it was contended that the trustee's plan could not be confirmed because it was only a means of effecting a complete liquidation of the debtor's property, and, therefore, within the condemnation of the Fidelity case, wrote: "That case, however, held merely that a petition is not filed in good faith where liquidation, and not a readjustment of the rights of creditors, was at the very outset the only outcome to be expected."

The trustee's plan there, however, proposed a sale of the apartment building and a distribution of the proceeds among creditors and was there confirmed by the District Judge and the Circuit Court of Appeals.

Judge Sanborn of the Eighth Circuit, in the case of Sylvan Beach v. Koch, 8 Cir., 140 F.2d 852–862, applied the Fidelity case as requiring a disposition of the reorganization proceedings there involved pursuant to section 236(2) above quoted.

In view of the change in the wording of sections 236 and 238 when they were enacted to take the place of Section 77B, sub. c(8), the provisions for liquidation not being carried from the old into the new, I cannot see how I can now order a liquidation except in a straight bankruptcy. There does not seem to be anywhere an expression of why Congress made the change. It seems to me that it might well have been considered unnecessary to make detailed provisions for the procedure after the dismissal of the reorganization proceeding, as are set forth in subsection k of Section 77B, where the same result could be obtained by directing a straight bankruptcy. The procedure in every instance is substantially the same. I do not see that following the provisions of section 236 would deplete the fund to be distributed to the creditors to any great extent. Section 248 of the Bankruptcy Act seems to take care of that. Whether or not other creditors may file claims is not an objection. They would probably be given the right to do so if requested in any event.

The debtor is plainly insolvent, and it seems to me, therefore, that the orderly statutory procedure must be followed as outlined in sections 236 and 238, and it will be so ordered.